**U.S. COURTS**

Shalynn F. Paddock
Pro-Se
212 N. 2nd St. E.
Homedale, ID 83628
(208) 230-1384

JAN 04 2018

Rcvd_____Filed_____Time_____
STEPHEN W. KENYON
CLERK, DISTRICT OF IDAHO

---

## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF IDAHO

---

Shalynn F. Paddock, M.B. And A.P.
Pro-Se

vs.

Andrew Ballou
Briana Dixon
County of Canyon, a public entity
Idaho Department of Health and Welfare CPS
RAYCHELLE MINDEN, in her individual capacity,
MIRANDA SQUIBB, in her individual capacity,
JASMINE OLMEDO, in her individual capacity,
ARACELI LUNA, in her individual capacity
Caldwell Police Department
Officer T. Edwards, in his individual capacity
Officer Defur, in his individual capacity
KIDS Services Inc. of Caldwell, Canyon County, ID
John and Jane Does 1-50

CASE NO.  1:18 - cv - 0005 - CWD

### COMPLAINT FOR DAMAGES

### JURISDICTION

1.  Shalynn F. Paddock bring this civil rights lawsuit pursuant to 42 U.S.C. Section 1983 to redress the deprivation of rights by Defendants, at all times herein acting under color of state law, of rights secured to Plaintiff Shalynn F. Paddock under the United States Constitution, including the Fourth, Thirteenth, and Fourteenth Amendment, and under federal and state law.

2.  Jurisdiction is conferred on this court by 28 U.S.C. Sections 1343(a)(3) and 1343(a)(4), which provide for original jurisdiction in this court of all suits brought pursuant to 42 U.S.C. Section 1983. Jurisdiction is also conferred by 28 U.S.C. Section 1331 because claims for relief derive from the United States Constitution and the laws of the United States. This court has supplemental jurisdiction over those claims of Plaintiff based on state laws, pursuant to 28 U.S.C. Section 1367.



FEE PAID
R# 21460

**PARTIES**

3.  At all times relevant to this Complaint, Plaintiff Paddock was a resident of

COUNTY OF CANYON, Idaho. Plaintiff Shalynn F. Paddock is the mother of minor Plaintiff, M.B.

(A fictitious name is used herein to protect the minor's privacy). At the time the incidents giving

rise to the causes of this action in this complaint occurred, M.B. Was four (4) years old.

4.  At all times applicable herein the COUNTY OF CANYON was and is a public

entity ("County"or "County of Canyon").

5. At all times applicable herein the CANYON COUNTY SHERIFFS

DEPARTMENT was and is a subdivision, entity, or administrative arm of the COUNTY OF

CANYON.
6. At all times applicable herein the CALDWELL POLICE DEPARTMENT was

and is a subdivision, entity, or administrative arm of the COUNTY OF CANYON.

7. At all times applicable herein, CPS worker RAYCHELLE MINDEN (hereafter

CPS refers to Child Protection Services) was/is an individual residing, on information and belief,

in the County of Canyon and an officer, agent, or employee of the State of Idaho.

8.  At all times applicable herein, CPS worker MIRANDA SQUIBB was/is

and individual residing, on information and belief, in the County of Canyon and an officer, agent,

or employee of the State of Idaho.

9.  At all times applicable herein, JASMINE OLMEDO was/is an individual

residing, on information and belief, in the County of Canyon and an officer, agent, or employee of

the State of Idaho.

10. At all times applicable herein, ARACELI LUNA was/is an individual

residing, on information and belief, in the County of Canyon and an officer, agent, or employee of

the State of Idaho.

11. At all times applicable herein, Officer T. Edwards was/is an individual

residing, on information and belief, in the County of Canyon and an officer, agent, or employee of

Caldwell Police Department in the County of Canyon.

12. At all times applicable herein, Officer Defur was/is an individual residing, on information and belief, in the County of Canyon and an officer, agent, or employee of the Caldwell Police Department in County of Canyon.

13. At all times applicable herein, KIDS Services (Kids In Divorce Support Services Inc.) was/is a corporation doing business in the County of Canyon.

14. At all times applicable herein, Andrew Ballou is an individual who was/is residing, on information and belief, in the County of Canyon.

15. At all times applicable herein, Briana Dixon is an individual who is/was residing, on information and belief, in the County of Canyon.

16. Hereinafter, when referred to collectively, the Defendants in paragraphs 7 through 10, inclusive, will be referred to as CPS workers.

17. Defendants DOES 1 through 50 are sued as fictitious names, their true names and capacities being unknown to Plaintiff Paddock. When ascertained, Plaintiff Paddock will amend this Complaint by inserting their true names and capacities. Plaintiff Paddock is informed and believes and thereon alleges that each of the fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and those Defendants proximately caused, are responsible for and/or legally liable for Plaintiff Paddock's damages as herein alleged. Each reference in this Complaint against all Defendants, including DOES 1 through 50.

18. Wherever in this Complaint reference is made to any act of Defendants, such allegations shall be deemed to mean all named Defendants and DOES 1 through 50, or their officers, agents, managers, representatives, employees, heirs, assignees, customers, tenants, did or authorized such acts while actively engaged in the operation, management, direction or control of the affairs of Defendants and while acting within the course and scope of their duties,

2

except as specifically alleged to the contrary.

19. At all times herein mentioned and with respect to the specific matters alleged in this Complaint, Plaintiff Paddock is informed and believes that each Defendant (including DOES 1 through 50) was a parent, subsidiary, affiliate, alter ego, partner, agent, franchiser, controlling licensor, controlling franchiser, principle, and/or joint venture of each of the remaining Defendants, and was at all times acting within the course and scope of such agency, service, employment, control and/or joint venture, and each Defendant has ratified, approved, conspired in, profited from and/or authorized the acts of each of the remaining Defendants and/or failed to prevent such acts when having the power and/or duty to do so, with the full knowledge of said acts.

## COMMON ALLEGATIONS

20. Plaintiff Paddock is informed and believes and thereon alleges that on 10/04/2017 Defendant Michelle Minden came to Plaintiff's home. Minden was allowed to inspect Plaintiff's home. Minden found no concerns and told Plaintiff Paddock that she would close the report. Between 10/04/2017 and 11/17/2017 police officers came to Plaintiff's home on a daily basis, sometimes twice a day, either alone or in pairs to do a "well child check". Each time Plaintiff Paddock allowed the police to inspect her home. The police stated that Plaintiff had to let them in because it was a well child or welfare check. The basis for every complaint against Plaintiff Paddock was was that M.B. Was not getting fed, that M.B. Had bruises on him from being hit by Plaintiff Paddock, that there were bedbugs, that there were drugs in the home including pipes and paraphernalia, that Paddock was drinking alcohol while breastfeeding (when Paddock wasn't breastfeeding at all) and that M.B. Was always locked in his room. No evidence of abuse of any kind was ever found by the police. Paddock collected cards for these officers but these cards were stolen from her residence when she was forced to flee.

21. On 11/14/2017 at around 1:45 p.m. Plaintiff Paddock went to Ontario Oregon

3

with her aunt, Kim Paddock, to buy Plaintiff a car. At 2:24 p.m. A text was sent by Andrew

Ballou's grandmother, Susan Chapman-Smith while Plaintiff was signing the title for her new car.

See Exhibit A. Chapman-Smith wanted to take M.B. To Oregon to stay with her. Paddock told her

no. At 2:37 p.m. Rebecca Sabin-Fleetwood, M.B.'s grandmother, messaged Paddock on

Facebook wanting to take M.B. Paddock informed her that she did not have permission to take

M.B. Or to be at her home. M.B. Was with Bobby Rawlin and Mary Kuykendall at the time. (This

is proof that Paddock wasn't home on the 14th at 2:00 p.m. As was stated in the protection order

filed by Andrew Ballou against Plaintiff Paddock nor was M.B. ). Paddock's home was broken into

while she was gone that day. Her son, M.B.'s room was messed up and staged for photographs

and items were stolen from the home. Mary Kuykendall left a message on Facebook to Bobby

Rawlin and stated on 11/18/2017: "And you do know that his (Andrew's) parents (Rebecca and

Josh Fleetwood) went into the house when nobody was there and took pictures of everything so

maybe that's how he (Andrew) found out (what to put in the protection order.) See Exhibit B.

Bobby forwarded this message to Paddock.

       21.(A) Officer Defur took the initial report of the break in and theft of Paddock's

home. Paddock later spoke to Defur's supervisor and found out that Defur lied to his supervisor

concerning this report and it was dismissed. This was case no. 17-30737. Another case regarding

the matter was opened by Defur's supervisor, case no. 17-31084 under officer J. Watkins. That

case was dismissed because Mary Kuykendall told the officer Watkins that she would not release

information to him. Mary Kuykendall also admitted to Paddock that she got a message from

Brianna Dixon admitting to breaking into Paddock's home but the message was deleted by her

husband Alan Kuykendall, (Plaintiff's employer) on 11/18/2017. Paddock notes that the report no.

17-30444, ( Exhibit C, 2 pages) injury to a child report states "Andrew stated that he had photos

and several videos of_____talking with Mary about_____getting locked into a room and not

being allowed to go to the bathroom to urinate. I watched the videos when I met with Andrew,

however I have not yet received the videos or photos to submit into evidence. Andrew stated that he intends to file a protection order against Shalynn on 11/17/2017 and had a meeting with an attorney on 11/16/2017."

22. On 11/17/2017 Defendant Araceli Luna came to Plaintiff Paddock's home for all of the complaints stated in 22. Luna interviewed Paddock, made sure that Paddock had food and formula in the home, checked M.B. For bruises and malnutrition, checked M.B.'s room for bedbugs and general safety, checked Plaintiff Paddock's baby A.P. For general well being. Luna stated that she found nothing wrong and would close the case.

23. Plaintiff Paddock drove to Boise after Defendant Luna left. After arriving in Boise, Plaintiff received a call from her room mate Bobby Rawlin that an officer Defur was there to take M.B. Bobby stated that she didn't want to give M.B. To Officer Defur but that Defur threatened her with arrest if she did not. Paddock stated that she wanted to speak to Officer Defur but he told Bobby that he did not have to. ( Bobby Rawlin put her phone on speaker as per Defur) Paddock stated that he did have to state why he was taking M.B. And that he (Defur) as per probable cause. Officer Defur stated that he had an order in front of him. Paddock asked what kind of order and the reason for the order? Defur refused to give Plaintiff that information except to sat that it was the other parent, (which is Andrew Ballou). Paddock informed Defur that Andrew Ballou had filed two falsified protection orders before but Defur didn't care. (those falsified protection orders are part of a prior court case concerning M.B.). Defur allowed Bobby to take pictures of the protection order with her cel phone to send to Paddock. See exhibit D. The order was written in someone's handwriting that was not Andrew Ballou but it was Defendant Ballou who signed it. The order was the original order and not a copy. ( Exhibit E-photo & copy of order) Apparently the authorities were in such a hurry to kidnap M.B. That a copy of the order was not made. Standing outside of Paddock's home with Officer Defur were Andrew Ballou and Defendant Briana Dixon. Officer Defur handed the order directly to Briana Dixon and not Andrew

5

Ballou according to Bobby Rawlin.

   24. The first hearing for Plaintiff Paddock was an evidenciary hearing on 11/28/2017 at 1:30 pm before Defendant Judge Jayne B. Sullivan concerning the falsified protection order filed by Andrew Ballou. Judge Sullivan refused to hear any evidence however. With no evidence allowed Judge Sullivan stated that she was bound under a statue to make sure that the child was not in harms way. Paddock's attorney, Shawn Miller, stated to Judge Sullivan that there was no evidence to support that statute. Judge Sullivan also ordered yet another investigation. She stated that the other three investigations from Health and Welfare CPS could be submitted by Paddock's council but would make no difference to her. Meanwhile the three investigations that Paddock was told would be closed are still not being released by CPS workers.

   25. Paddock contacted CPS workers on multiple occasions to find out why these closed cases have not been filed? Paddock was told that they were being held up by Defendant Sqibb (as was stated by Defendant Rachelle Minden) and that Paddock needed Squibb's approval to release them. Minden stated that she completed the first investigation on 12/13/2017. Minden also stated that each complaint must be closed before the other complaints can be closed. In other words, the first one must be closed before the second one is, and the second one must be closed before the third one is. Then all three complaints must have final approval by Squibb before Paddock can request copies of the reports. The first investigation was done on 10/04/2017 and was closed on 12/13/2017. According to Idaho law these reports are to be filed within 30 days. And thus a web of deceit and trickery enslaves Paddock as yet another investigation had been ordered by Judge Sullivan. The Defendants CPS workers play a game of divide and conquer with the intent of keeping Paddock from her child and by costing Paddock so much money in attorney's fees that she can never win and will go broke.

   26. Even though Judge Sullivan signed an order stating that Health and Welfare

6

was to set up the visits with Paddock's son, Defendant Squibb denied Paddock visits with M.B.

Through Health and Welfare because M.B. wasn't a foster child, thus denying the judge's order.

Paddock was forced to visit her son at KIDS Services which costs $50.00 an hour, a $40.00

deposit for a "late fee"and a $60.00 application and intake fee. Once again the Defendants play

"break the bank". Paddock was given no choice by KIDS Services about when and how long

visitations would be. Paddock was told that she would be allowed to visit every Friday for two

hours which is $100.00 per visit. Paddock points out that KIDS Services stands for Kids In

Divorce Settlement and is a private corporation.

       27.An injury to a child charges against Plaintiff Paddock was filed on 12/06/2017

and served on 12/17/2017, just two days prior to Paddock's second evidenciary hearing in an

effort to tie Paddock up in one court proceeding after another and to keep M.B. From his mother.

The charges filed were allegations of the child not being fed on 11/13/2017 and had his first meal

on 11/14/2017. See Exhibit F According to texts from Paddock on 11/13/2017 to a friend, she had

ordered a pizza from Pizza Hut and had it delivered. It was a stuffed crust pepperoni pizza.

Present in Paddock's home were Bobbie Rawlin, Bobbie's daughter I.R., M.B. And Paddock's

daughter A.P. Take note that Defendant Ballou stated in his protection order that the abuse

occurred on 11/14/2017 and yet the police report states that it happened on 11/13/2017 at

"unknown time." There is no report of the police going to Paddock's home on 11/13/2017

however. The report was filed 11/15/2017. The report was also filed by Officer C. "Chittenden"

whose badge number is 123 but it was Officer T. Edwards whose name is on the summons. Most

of the information on the attached police report is also whited out. This report states at the bottom

that it was assigned to Health and Welfare and to detectives and yet there is no report attached.

       28. The court ordered investigation by Defendant Sullivan was never sent to CPS

workers, thus dragging court out until 1/26/2018.

       29. On 12/08/2017 Sergeant Scott Crupper came to Plaintiff's home for a

complaint about soda in the baby's bottle. Plaintiff explained to the officer that it was prune juice and water in the bottle. It turns out that Plaintiff's room mate, Bobby Rawlin was the one who called in this complaint. Sergeant Crupper stated that there were no concerns.

        30. On 12/09/2017 Defendant Jasmine Olmedo arrived at Plaintiff Paddock's home with and "assistant" , Officer T. Edwards, and one female officer, Officer Jensen (verify). Paddock opened her door and when she tried to close it the Defendants pushed the door open and came towards Plaintiff's baby with no permission to do so. Paddock informed them that she was going to be late for work and that the Defendants needed to come back at another time. Defendant's concerns on that day were rashes on baby A.P. And soda pop in the baby's bottle. Plaintiff, upon hearing about the same complaint about soda being in the bottle, informed Officer T. Edwards that Sergeant Crupper had been at her residence the day before for the same complaint and found nothing wrong. Officer T. Edward stated that he found no such report on file. The Defendants proceeded to force Plaintiff to strip her baby daughter A.P. naked and Officer Jensen inspected her with a flashlight between the baby's legs for "rashes". The Defendants proceeded to toss Plaintiff's home, including mattresses, searching for "bedbugs" and found none. The Defendants searched Bobby Rawlins room also over the objections of Paddock. Plaintiff wanted to know if they wanted her to call I.R. (Bobby Rawlin's daughter) to come home from her father's house to be inspected too? I.R.'s father lives close by. The Defendants said no. Paddock asked the Officers if they were there because of the court ordered investigation by Judge Sullivan? The Defendants said they knew of no such order, even though it was to be issued on 11/19/2017. The Defendants stated that they would be coming back.

        31. Plaintiff Paddock was now in fear of having her three month old daughter i illegally kidnapped as well and fled her home on 12/09/2017, never to return to live there. Upon her returning to collect some of her things, Paddock found that her appliances were stolen, a blunt object was used to destroy her T.V., baby items and many other items were stolen, the

bathroom faucet was stolen, and someone left excrement in her toilet.

32. According to Bobby Rawlin, the authorities came by Plaintiff's home four times in one day on 12/13/2017. These authorities called Bobby Rawlin, who wasn't home, and notified her of this. These authorities were angry that Bobby wasn't home.

33. On 12/16/2017 Plaintiff Paddock had her first visitation with her son M.B. At KIDS Services in Caldwell, ID. "Rick" from KIDS was present during this visit. Without any prompting M.B. Stated the following. a.) That Briana Dixon told him that his mother didn't love him. b.) M.B. Was angry that Brianna told him that he is a bad kid and she tells him this every day. c.) Brianna said that he would never go home again because his mother is an awful person who did bad things. d.) M.B. Thinks that the only way he can come home is if Paddock and Briana get along. e.) M.B. Said that he loves and misses his mother over and over. He is convinced that his mother doesn't want him. M.B. Refused to leave with Andrew Ballou after the visit. M.B. Took his coat and shoes back off and stated that he didn't want to go. Rick made Paddock lie to her son and say that she would see him the next day in order to get M.B. To leave. (See Exhibit F-reports from KIDS Services). Paddock is not surprised that the techniques used by Briana Dixon are used by others in case after case of abuse committed by Health and Welfare in order to break up families and distance children from their parents. Briana Dixon somehow knows these techniques better than any normal person would.

34. Following this visitation at KIDS Services "Rick" said that he would forward his report to the court.

35. Plaintiff Paddock called KIDS Services and sent an email to find out when she could see her son again. Nobody returned her calls. Paddock received an email from KIDS Services from "Chris" stating that he would be out of the office through the end of the year. (See Exhibit G). Apparently there was a visitation on 12/22/2017 that neither Paddock nor Andrew knew about. Andrew, in a recorded call, stated that he got a call while he was at Taco Bell from

KIDS Services saying that there was a visitation scheduled. Andrew hurried over there and was late. Paddock never knew about it so didn't show up.

36. On 12/19/2017 Plaintiff went to court concerning the falsified protection order in front of Judge Orr. Judge Orr stated that Judge Sullivan's notes said that it was up to Paddock's attorney, Shawn Miller, to get the Health and Welfare investigation finished (yes, the one against his own client) even though it was ordered by Judge Sullivan at the prior hearing. Attorney Shawn Miller stated that Judge Orr was violating his clients rights by continuing these proceedings with yet again no evidence being heard and that his client has already been 45 days without her son based on hearsay evidence alone. Judge Orr ordered yet another investigation.

37. On 12/29/2017 Plaintiff Paddock went to KIDS Services for the visit with her son M.B. M.B. Would eat for a few minutes then would get upset and lay his face on his arms on the table. M.B. Knew about his mother not living at their home in Caldwell anymore. Paddock went into the office to pay Rick the $100.00 for the visit. Rick stated that since Paddock didn't make the last visit she now owed $40.00 more. Rick was not going to charge Andrew $40.00 for being late, however, claiming that Andrew was on time. Paddock stated that she had a recording that proved that Andrew was late. Rick got furious and yelled at Paddock that "Andrew is a liar!". Rick also stated that Andrew waited at KIDS Services until 15 minutes after the time of the visitation when Andrew, on the recorded call, stated that the visit was canceled. "We didn't know until ten minutes after" stated Andrew Ballou on a recorded call on 12/25/2017. The second report in Exhibit F states that M.B. Accused his mother of hitting him with a spatula. "Rick" lied in the second report about Paddock being the one who hit M.B. with a spatula. Paddock has a recording of a phone call with M.B. That states that it was someone else that hit him with a spatula.

38. Plaintiff Paddock notes that her last contact with Andrew Ballou was on Facebook on 10/22/2017. Paddock would also note that according to her text messages the last time that Andrew Ballou visited M.B. Was on 09/29/2017. Andrew paid no attention to M.B. And

instead was on his phone with Briana Dixon, texting her and was on Paddock's porch smoking cigarettes while M.B. Was inside playing with I.R. Ballou stayed for about 5 minutes. Briana Dixon then came to Paddock's house to pick up Ballou. On 11/04/2017 Ballou had an arranged visit with M.B. At noon that he never showed up for. Ballou apparently went to McCall, Idaho instead.

        39. Plaintiff Paddock also notes that Andrew Ballou has an extensive criminal record and multiple felonies including breaking and entering. Defendant Ballou was in prison for three of the four years of M.B.'s life and was never interested in this child during that time. Andrew Ballou has been aware that M.B. Was never his biological child, in fact, since he met Plaintiff Paddock when she was already four months pregnant.

        40. Plaintiff Paddock also notes that Defendant Briana Dixon dated Defendant Andrew Ballou's uncle prior to dating Andrew. Dixon and Andrew Ballou live together in a home that she claims to own. Paddock finds it odd that Briana Dixon has admitted to being in several accidents that she caused, one in which she totaled her car, and also has a speeding ticket and yet has no record in the Idaho Repository.

        41. Plaintiff Paddock owned the home that she has now been forced to abandon along with the contents. Paddock had a job and was supporting her family and had to quit in order to leave the County of Canyon. Paddock has no criminal record. The actual damages may be the loss of her home and everything that she left in it but the emotional cost to her and her two children is difficult to calculate.

        42. The efforts of the state and the Defendants to kidnap both of Plaintiff Paddock's children amounts to: bias and discrimination, kidnapping, attempted kidnapping, gross misconduct, gross negligence, extortion, collusion, fraud, defamation, slander, and submitting false evidence with the intent of kidnapping among others.

        43. Plaintiff Paddock reserves the right to file federal action against Judge Jayme

Sullivan and Judge Debora Orr concerning the civil rights violations as stated in this action.

### FIRST CLAIM FOR RELIEF
### FOR VIOLATION OF FEDERAL CIVIL RIGHTS (42 U.C.S. 1983)

### COUNT 1

**Violation of Familial Association by Brian Dixon And KIDS Services: Violation of Privacy, Warrantless Search Regarding the Examination of a Child at Plaintiff's Home by CPS Workers, Officers, and DOES 1 Through 50, Inclusive. Plaintiff alleges that the right to familial association is guaranteed under, without limitation, the First, Fourth, and Fourteenth Amendments.**

### COUNT 2

**Violation of Sixth Amendment Right To Not Be Subjected To Heresay Evidence Regarding The Filing Of False Protection Order and False Allegations Of Child Abuse Which Is Slander: By Plaintiff Against Defendant Andrew Ballou.**

### COUNT 3

**Violation of the 13th Amendment Against Slavery Or Involuntary Servitude: Regarding CPS Workers, And KIDS Services.**

44. Plaintiff reallege, and incorporate herein as if set forth in full, all of the proceeding paragraphs.

45. Plaintiff Shalynn Paddock is an individual and citizen of the United States, protected by 42 U.S.C. 1983.

46. Plaintiff is informed and believe and thereon allege that the right to familial association guaranteed under, without limitation, the First, Fourth and Fourteenth Amendments is "clearly established" such that a reasonable CPS worker, Officer, Judge, KIDS Services employee, state actor, or any other Defendant would know it is unlawful to question, threaten, examine, or search a child in the absence of exigent circumstances, without obtaining judicial authorization or parental consent.

47.Defendants, and each of them, had, at all times relevant herein, an affirmative duty and obligation to recognize and conduct themselves in a manner that confirms, provides for, and does not violate the protections guaranteed Plaintiff Paddock under the United States Constitution, including those under the First, Fourth, Sixth, Thirteenth and Fourteenth

Amendment, to include without limitation, the protection of parental rights, the right to privacy, family integrity, and the right to familial relations.

48. Allegations for 22: Harassment, intimidation, collusion, attempted kidnapping, emotional distress and violation of due process by Defendants Andrew Ballou, and officers who came daily to Plaintiff's home (DOES 1 through 50) for "well child checks" that were based on heresay from which no evidence to support the claims was found.

49. Allegations for 23: Proof of false allegations on the protection order filed by Defendant Andrew Ballou constitutes attempted kidnapping, harassment, and submitting false evidence which slanders Plaintiff Paddock. The staging of the scene of a "crime" by Rebecca and Josh Fleetwood and possibly Briana Dixon, with the purpose of assisting in the kidnapping of M.B. constitutes collusion and a violation of privacy.

50. Allegations for 24: Defendant Defur, under color of law, attempted to cover up a crime that was committed by other Defendants involved concerning the attempted kidnapping of M.B. In an effort to protect the other Defendants which constitutes collusion, accessory to kidnapping, and a breach of duty. Defur also showed bias and discrimination against Plaintiff Paddock by making sure that the report of the break in and theft of her home on 11/14/2017 was dismissed by lying to his supervisor. According to police report 17-30737, Defendant Andrew Ballou came forward with photos and video that were seen by officer "Chittenden". This is proof that photos and video were indeed taken at Paddock's house to be used for the kidnapping of M.B. and that Caldwell Police Department were aware of it. Plaintiff contends that these photos and video were never admitted as evidence due to her filing the police report of the break-in of her home on 11/14/2017. Defur, aware that these videos and photographs could no longer be used against Paddock, attempted to bury the report submitted by Paddock concerning the break in and theft that happened at her home on 11/14/2017. The police were also made aware of Ballou's intent on filing a protection order on 11/17/2017 ( a Friday) and that he had a meeting

with his attorneys on 11/16/2017.

51. Allegations for 26: Defendant Defur, under color of law, committed a violation of the right to privacy against Paddock and an improper service of notice by allowing Plaintiff's room mate, Bobby Rawling, to photograph the original protection order. Defur also violated Plaintiff's right to have an actual copy of the order at the time of service. Then Defur proceeded to kidnap M.B. with an order signed by Judge Sullivan. Officer Defur violated breach of duty and the right to privacy once again by handing the original order to Briana Dixon instead of Andrew Ballou.

52. Allegations for 27: Judge Sullivan, under color of law, violated Paddock's due process and committed breach of duty by not allowing evidence to be heard at an evidenciary hearing. With no proof to back the statute that Judge Sullivan claimed to be bound under she committed collusion and is an accessory to kidnapping M.B. Judge Sullivan ordered an investigation and did not see to it that it was carried out, instead placing the blame of the investigation not being carried out on Plaintiff's attorney, Shawn Miller at the next hearing in her notes that were left with Judge Orr. Attorney Shawn Miller has ordered transcripts of the first hearing before Judge Sullivan as proof of what Sullivan stated in court.

53, Allegations for 28: CPS workers, under color of law, blatantly violated Idaho law which states that they have 30 days to file their investigations against Plaintiff Paddock. CPS workers proceeded to unduly extend the time that these cases would be filed with one excuse after another in order to keep Paddock enslaved to them, the courts and to KIDS Services. The reports to be submitted by CPS also don't coincide with police reports so CPS will not release them. CPS workers violated Paddock's parental rights, her due process of law, committed breach of duty, destroyed family integrity and conspired in the kidnapping of M.B. and attempted kidnapping of A.P.

54. Allegations 29: CPS workers, under color of law, violated Judge Sullivan's

13

order and forced Paddock to visit her son through KIDS Services with the knowledge and intent of costing Paddock yet more money thus committing extortion.

55. Allegations for 30: False charges of injury to a child were filed against Paddock by the police which constitutes perjury, fraud, violation of due process of law, slander, accessory to kidnapping, and a violation of Paddock's parental rights. These charges were filed just prior to her court date concerning the falsified protection order in an effort to extend the time that she is kept from her son M.B. Furthermore, the date does not coincide with the date that was reported by Andrew Ballou concerning the alleged abuse.

56. Allegations for 31: By failing to file for her court ordered investigation, Judge Sullivan intentionally made certain that Paddock would be kept from her son, M.B. for an extended period of time. This constitutes conspiracy, collusion, violation of Paddock's parental rights, accessory to kidnapping, and a breach of duty.

57. Allegations for 33: CPS workers and police, under color of law, forcibly pushed open Paddock's door when she tried to close it and entered without probable cause or warrant and conducted an illegal search. CPS workers and police violated Paddock's due process, invaded her privacy and the privacy of her infant daughter, A.P., When the female officer forced Paddock to strip A.P. naked and inspected her with a flashlight between the legs in front of all who were present.

58. Allegations for 35: CPS workers and police, under color of law, attempted to kidnap Paddock's daughter, A.P. And continued to harass and intimidate Paddock.

59. Allegations for 36: Briana Dixon harassed, intimidated, coerced, and lied to M.B. In an attempt to keep the child away from his mother emotionally. Dixon used typical methods of the system to break the bond between mother and child thus violating Paddock's parental rights. "Rick" of KIDS Services forced Paddock to lie to her son in order to get him to leave with Andrew Ballou which violated Paddock's parental rights, destroys familial association,

14

and constitutes emotional distress to both Paddock and her son, M.B..

        60. Allegations for 38 & 40: KIDS Services employees failed to notify Paddock or Andrew Ballou of a visit that they scheduled on 12/19/2017. Paddock had called and texted to KIDS Services over the course of the week to find out when her next visitation was. KIDS Services violated Paddock's parental rights and then committed an act of extortion by forcing her to pay an additional $40.00 for a missed visit. "Rick" at KIDS Services then lied to Paddock about Ballou being there on time to justify not charging Ballou an additional $40.00 as well. This constitutes bias and discrimination against Paddock. KIDS Services are guilty of violating Paddock's parental rights by not communicating with her concerning upcoming visits and have caused emotional distress to Paddock.

        61. Allegations for 39: Judge Orr, under color of law, violated Paddock's rights by refusing to hear any evidence which is a violation of Paddock's due process. Judge Orr willfully violated Plaintiff's rights in court even after Paddock's attorney, Shawn Miller, pointed out this fact to Judge Orr. Judge Orr is guilty of breach of duty, allowing a continuing violation of Paddock's parental rights and allowing the kidnapping of M.B. to continue.

        62. Allegations against all Defendants: Putting M.B. In harm's way by leaving him with a multiple felon who is violent, Defendant Andrew Ballou, and for leaving M.B. with Briana Dixon who lives with Andrew Ballou ( his 'girlfriend') and who is continuously abusing M.B. and violating his rights and the Plaintiff's rights as well as stated.

        63. Allegations against the Department Health and Welfare and Child Protective Services, specifically, are violations of Plaintiff Paddock' and M.B.'s  constitutional rights to be free from slavery which is a violation of the Thirteenth Amendment of the United States. The abuse of power by these agencies is heinous and they are allowed to use laws established purposefully by the State of Idaho to deny citizens their civil rights and to destroy, control, and enslave families as in this case. Plaintiff Paddock believes that the State of Idaho, including the

County of Canyon, use CPS as a hammer to beat certain people into submission and servitude which meets the criteria of slavery. Plaintiff Paddock has also found that approximately 75% of the calls into CPS are unfounded or are called in to harass or falsely accuse people such as Paddock. Paddock is convinced that there is no saving this agency, CPS, from corruption and abuse of power, so Paddock demands that it be dissolved. Without the dissolution of CPS Plaintiffs remain under a continuing threat of reprisal, kidnapping, false allegations being filed, and further violations of their rights by the "legal" kidnappers at CPS and from the other Defendants in this action.

64. The placement of Plaintiff Paddock's name on the Child Abuse and Neglect Registry violates her Sixth Amendment right not to be subject to heresay evidence. When a parent's name is entered in a registry of child abusers, without having had been convicted of the crime of child abuse, it publicly presents this person as though he/she were a convicted criminal and has the effect of legally slandering and libeling his/her character. Having one's name on the CANR also disqualifies a person from getting certain jobs that involve being with and caring for children forever which is bias and discrimination. Paddock was certified to work in child day cares and can no longer do so. Paddock demands the removal of her name from the CANR list and demands the immediate return of her son, M.B.

65. These Defendants acted with malice and with the intent to cause injury to Plaintiff Paddock and her children, or acted with willful or conscious disregard of the rights of Plaintiffs in a despicable, vile, and contemptible manner. Plaintiffs are therefore entitled to recover punitive damages from all Defendants, and each of them, as permitted by law and as according to proof at trial, due to the wrongful conduct of the Defendants, as herein alleged, and to deter them and others from such conduct in the future.

66. As a direct result of these Defendants' misconduct, Plaintiffs have suffered and continues to suffer, general and specific damages according to proof at trial, including but not

limited to, physical and/or mental anxiety and anguish, among other things. Paddock has also

incurred, and will continue to incur cost and expenses, including those authorized by 42 U.S.C.

Section 1988, to an extent and in an amount subject to proof at trial.

### COUNT 4

**For Monell-Related Claims by Plaintiff Paddock Against County Of Canyon and DOES 1
Through 50, Inclusive.**

        67. Plaintiff Paddock reallege, and to the extent applicable, incorporate herein as

if set forth in full, each of the foregoing paragraphs.

        68. Defendant County of Canyon, including through it's governmental agencies

herein, is a "person" with the meaning of 42 U.S.C. 1983 and subject to Monell liability. Monell v.

Dept. of Social Services (1978) 436 U.S. 658.

        69. Defendant County of Caldwell, including its entities and governmental

agencies, including individual Defendants named herein, had a duty to Plaintiff Paddock at all

times to establish, implement and follow policies, procedures, customs, and/or practices

(hereafter referred to as "policy" or "policies") which confirm and provide the protections

guaranteed Plaintiff Paddock under the United States Constitution, including those under the

First, Fourth, Sixth, Thirteenth, and Fourteenth Amendments, to include, without limitation, the

protection of the right to familial relations, the right to privacy, the right not to be defamed or

stigmatized; the right not to be made a slave or placed into servitude, and the right to procedural

due process. Said Defendants also had a duty to use reasonable care to select, assign,

supervise, train, control and review the activities of all of their agents, officers, and employees

and those acting under them, so as to protect these constitutional rights; and to refrain from

acting with deliberate indifference to the constitutional rights of the Plaintiff in order to avoid

causing the injuries and damages alleged herein. Based on the duties charged to County of

Canyon, including the nature of work relating to juvenile dependency proceedings, County of

Canyon knew or should have known the obvious need to establish customs, policies, and

practices to protect the aforementioned civil rights of parents and their children.

70. Defendant County of Canyon, its entities and governmental agencies, and individual Defendants named herein, established and/or followed policies, procedures, customs, and/or practices which policies were the moving force behind the violation of Plaintiff Paddock's constitutional rights, including those under the First, Fourth, Sixth, Thirteenth and Fourteenth Amendments by, but limited to: a.) The policy of detaining and/or removing children from their family and homes without exigent circumstances (imminent danger of serious bodily injury), a fact-based court order, and/or consent; b.) the policy of removing children from their families without first obtaining a warrant when no exigency exists; c.) the policy of examining children without exigency, need, or proper court order, and without the consent of the parent or guardian; d.) the policy of removing and detaining children, and continuing to detain them for an unreasonable period after any alleged basis for detention is negated; e.) by acting with deliberate indifference in implementing a policy of inadequate training and/or supervision, and/or by failing to train and/or supervise its officers, agents, employees and state actors, in providing the constitutional protections guaranteed to individuals, including those under the First, Fourth, Sixth, Thirteenth and Fourteenth Amendments, when performing actions related to child abuse and dependency type proceedings. (This list is not exhaustive due to the pending nature of discovery and the privileged and protected records of investigative and juvenile dependency type proceedings. Plaintiff Paddock may seek leave to amend this pleading as more information becomes available.)

71.County of Canyon, its entities and governmental agencies, including individual Defendants named herein, breached its duties and obligations to Plaintiff Paddock by, but not limited to, failing to establish, implement and follow the correct and proper Constitutional policies, procedures, customs and practices; by failing to properly select, supervise, train, control, and review its agents and employees as to their compliance with Constitutional safeguards; and by

18

deliberately permitting Defendants specifically stated in this action as employees of said governmental agencies, (including DOES 1 through 50 inclusive) to engage in the unlawful and unconstitutional conduct as herein alleged with a total indifference to the rights of the affected parent which is Plaintiff Paddock.

72. County of Canyon knew, or should have known, that by breaching the above-mentioned duties and obligations that it was reasonably foreseeable that its agency policies, practices, customs and usages would, and did, caused Plaintiff Paddock to be injured and damaged by County of Canyon's wrongful policies, or deliberate lack thereof or deliberate indifference to the need for such policies and/or training, and other acts as alleged herein, and that such breaches occurred in contravention of public policy and their legal duties and obligations to Plaintiff Paddock; and that such policies were the moving force behind the violation of Plaintiff's constitutional rights as alleged herein above. Namely, Plaintiff's civil rights were violated, as mentioned above, when Defendants, employed in governmental agencies in County of Canyon, including DOES 1 through 50, while acting under color of state law and in conformance with official County of Canyon policies, conspired and/or acted to seize Plaintiff Paddock's child without a warrant; and then lied about Plaintiff in various reports.

73. These actions, and/or inactions, of County of Canyon are the moving force behind, and direct and proximate cause of Plaintiff Paddock's injuries, as alleged herein; and as a result, Plaintiff has sustained general and special damages, to an extent and in an amount to be proven at trial. In addition, Plaintiff has incurred and will continue to incur cost and expenses, including those authorized by 42 U.S.C. 1988 to an extent and in an amount subject to proof at trial.

## **COMPLAINT 5**

### **FOR VIOLATION OF STATE CIVIL RIGHTS by Plaintiff Paddock Against All Defendants and DOES 1 Through 50, inclusive**

74. Plaintiff realleges, and to the extent applicable, incorporates herein as if set

forth in full, each of the foregoing paragraphs.

75. Plaintiff is informed and believes and thereon allege that County of Canyon CPS workers, police including Officer Defur and Officer T. Edwards, by use of intimidation, deception, fraud, and coercion (or attempts to threaten, intimidate, deceive, defraud, and coerce), interfered with Plaintiff Paddock's exercise and enjoyment of the rights secured by the United States Constitution and other Federal laws, the Constitution and laws of the State of Idaho,

76. Plaintiff Paddock is informed and believes and therefore allege that government searches and seizures are inevitably acts of "political violence" that cause fear, degradation, humiliation, and indignity along with its obvious physical impacts including confinement. (See: Doriane Lambelet Coleman, "Storming the Castle to Save the Children: The Ironic Costs of Child Welfare Exception to the Fourth Amendment, 47 Wm. & Mary L. Rev. 413 fn. 20 (2005); relied upon for other reasons in Green v. Camreta (9th Cir. 2009) 588 F.3d 1011, 1016.)

77. The rights violated by the public employees mentioned herein, and each of them, are protected by appropriate Idaho Civil Codes which entitle Plaintiff to compensatory and punitive damages, injunctive relief, statutory civil penalty (where applicable) and costs of this action as provided for by the laws and the Constitution of the State of Idaho, and are requested herein.

78. In doing the acts alleged in this Complaint, the Defendants and DOES 1 through 50, and each of them, knew or should have known that their actions would, or were likely to, injure and damage Plaintiff Paddock. Plaintiff is informed and believes and thereon allege that the Defendants and DOES 1 through 50, and each of them, intended to cause injury and damage to Plaintiff Paddock  and/or acted with willful and conscious disregard of Plaintiff Paddock's rights, thus entitling Plaintiff to recover punitive damages.

20

her first visit with her son. M.B.'s confinement was nonconsensual, was undertaken without proper judicial authorization, and without any of the Defendants and DOES 1 through 50 inclusive, being in possession of any evidence that M.B. Was in imminent danger of serious bodily injury or death at the hands of his mother.

87. As the direct and proximate result of the dereliction of duty of the Defendant KIDS Services, Plaintiff M.B. Has had his familial liberty interests violated, and has suffered, and will continue to suffer, physical, mental, and emotional injury, all to an extent and in an amount subject to proof at trial.

<u>CLAIM 9</u>

**FOR INVASION OF PRIVACY Against All Defendants and DOES 1 through 50, inclusive**

88. Plaintiff Paddock reallege, and to the extent applicable, incorporates herein as if set forth in full, each of the foregoing paragraphs.

89. Plaintiff Paddock and her son, M.B., have a protected liberty interest in the privacy and integrity of their family unit, free of unwarranted governmental intrusion.

90. County, by and through Defendants CPS workers, the police including Officer Defur and Officer T. Edwards and DOES 1 through 50 inclusive, intruded on the privacy of Plaintiff's family, by, but not limited to, removing M.B. From the care and custody of his mother, Plaintiff Paddock, without consent, court decree, or exigent circumstances; continuing to detain M.B. Without basis. Each act mentioned above was carried out intentionally, and with full knowledge of the probable consequences thereof.

91. Said intrusions upon the family home and privacy interests of Plaintiff would b be highly offensive to any reasonable person, and was, in fact, highly offensive to Plaintiff Paddock.

92. As the direct and proximate result of the County's employees and agents dereliction of duty, Plaintiff has suffered, and will continue to suffer, physical, mental, and

emotional injury, all to an extent and in an amount subject to proof at trial. Plaintiff has also

incurred, and will continue to incur, costs and expenses, to an extent and in an amount subject to

proof at trial.

93. Plaintiff Paddock is informed and believes that at all times mentioned herein,

Defendants CPS workers, the police including Officer Defur and Officer T. Edwards and DOES 1

through 50 inclusive, acted willfully with the wrongful intention of intruding upon Plaintiff Paddock

and for an improper and evil motive amounting to malice in the aforementioned tortious and

criminal conduct was intentionally committed by the above named Defendants that was knowingly

oppressive, malicious, and wanton with the intended purpose to cause harm to Plaintiff Paddock.

Therefore, Plaintiff is entitled to an award of punitive damages from CPS workers, and the police,

including Officer Defur and Officer T. Edwards, and to deter them and others from such conduct

in the future.

94. County of Canyon is vicariously responsible for the conduct of its employees

and agents, under applicable Idaho Government Codes and other applicable statutory and case

law.

## CLAIM 10

### FOR DECLARATORY RELIEF By Plaintiff Paddock Against County; and DOES 1 through 50, inclusive

95. Plaintiff realleage, and to the extent applicable, incorporate herein as if set

forth in full, each of the foregoing paragraphs.

96. As stated herein, Plaintiff, as a citizen and an individual, is protected by the

laws of the State of Idaho, as well as those of the United States Constitution, including the First,

Forth, Sixth, Thirteenth and Fourteenth Amendments thereto.

97. As stated herein, Defendants County of Canyon, and DOES 1 through 50,

inclusive, have wrongfully, unlawfully, and with deliberate indifference to the rights of Plaintiff

Paddock, and with utter disregard of County's duties and obligations to Plaintiff, acted, practiced,

and/or adopted policies, practices, procedures and/or customs which are in violation of the rights of Plaintiff, including those to be free from governmental interference as to their familial associations and from unreasonable searches and seizures, including those relating to child abuse allegations and related actions and proceedings.

98. County of Canyon has failed to acknowledge their improper, unlawful and unconstitutional actions, conduct and policies at the time of the incidents at issue in the present action, and Plaintiff Paddock is informed and believes, and on that basis allege, that presently County of Canyon has not changed or modified such actions, conduct and/or policies to conform to law.

99. County's wrongful and unlawful conduct, actions, and/or policies, unless and until enjoined and restrained by order of this court, will cause, and continue to cause, great and irreparable injury to Plaintiff Paddock and other individuals and citizens, in that County of Canyon will continue to act in accordance with said unlawful policies, and with deliberate indifference to their duties and obligations under state and federal law, including those under the First, Fourth Sixth, Thirteenth and Fourteenth Amendments as alleged herein above.

100. Plaintiff Paddock has been forced from her home, abandoning nearly all that she owns, including the down payment on her home, and the contents of the home and was forced to quit her job. Paddock fled to Owyhee County, Idaho. As M.B. And A.P. Are still minor children, Plaintiff Paddock lives in fear that the Defendants, in the absence of injunctive relief could conceivably employ the same policies, customs, and practices complained of herein to again detain the minor M.B. Or to kidnap her daughter, A.P., especially if Plaintiff wishes to return to County of Canyon.

101. Plaintiff Paddock has no adequate remedy at law to prevent or prohibit County of Canyon from continuing, and/or repeating, its unlawful and unconstitutional conduct and policies other than through injunctive relief, and therefore seeks an order enjoining and

prohibiting County of Canyon by, but not limited to the following: a.) the policy of detaining or removing children from their family and homes without exigent circumstances (imminent danger of serious bodily injury), court order and/or consent; b.) the policy of removing children from their family and their homes without first obtaining a warrant when no exigency exists; c.) the policy of examining children without exigency, need, or proper court order, and without the consent of their parent or guardian; d.) the policy of removing and detaining children, and continuing to detain them for an unreasonable period after any alleged basis for detention is negated; e.) by acting with deliberate indifference in implementing a policy of inadequate training and/or supervision, and/or by failing to train and/or supervise its officers, agents, employees and state actors, in providing the constitutional protections guaranteed to individuals, including those under the First, Fourth, Sixth, Thirteenth, and Fourteenth Amendments, when performing actions related to child abuse and dependency type proceedings.

### Claim 11

**NEGLIGENCE By Plaintiff Paddock Against County; Defendants The Police Including Officer Defur and Officer T. Edwards; and DOES 1 Through 50 inclusive**

102.  Each of the above stated Defendants owed Plaintiff Paddock the statutory duty; Before taking a minor into custody, a social worker shall consider whether the child can remain safely in his or her residence. Defendants the police including Officer Defur and Officer T. Edwards and Judge Sullivan breached their respective duties of care by, but not limited to, failing to even consider, as they are required to do, whether M.B. Could remain safely with his mother. County and Defendants, as stated above, breached their respective duties of care by, but not limited to, failing to perform any assessment at all, much less the mandatory assessment of the statutory factors, prior to the removal of M.B. From his mother's custody.

103.  Plaintiff Paddock is informed and believes and thereon alleges that, had the above mentioned abduction of a child performed by private citizens, such an act would have been criminal and would be considered kidnapping, but would entitle Plaintiff Paddock to bring civil suit for compensatory and punitive damages.

104.  As the direct and proximate result of negligent conduct and dereliction of duty of

26

Defendants, County, the police including Officer Defur and Officer T. Edwards, Plaintiffs have had their familial liberty interests violated, have suffered, and will continue to suffer, physical, mental and emotional injury, all to an extent and in an amount subject to proof at trial. Plaintiff Paddock will also incur costs and expenses to an extent and in an amount subject to proof at trial.

105. County of Canyon is vicariously responsible for the conduct of its employees, agents, and officers under Idaho Government Codes and other applicable statutory and case law.

## JURY DEMAND

Plaintiff Paddock, M.B. And A.P. Demand a jury trial as to all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, Shalynn Paddock, M.B. And A.P. Prays for judgment against all Defendants, as to all causes of action, as follows:

1. General damages and special damages according to proof, but in no event less than $500,000;
2. As against only the individual defendants and not to any municipality, punitive damages as allowed by law;
3. Costs and expenses as can be claimed by law or statute.
4. Injunctive relief, both preliminary and permanent, as allowed by law, (including preliminary injunctive relief to be based upon a separate application);
5. Such further relief as the Court deems just and proper.

*Shalynn Paddock*

**Shalynn Paddock, pro-se**
**212 N. 2nd St. E.**
**Homedale, ID 83628**
**(208) 230-1384**

27

## CERTIFICATION OF SERVICE

I hereby certify that on January_____, 2018, I filed the forgoing document with the United States District Court for the District of Idaho. I certify that the following parties will be served:

Andrew Ballou

Briana Dixon

County of Canyon

Idaho department of Health and Welfare CPS

Raychelle Minden

Miranda Squibb

Jasmine Olmedo

Araceli Luna

Caldwell Police Department

Officer T. Edwards

Officer Defur

KIDS Services Inc.

Shalynn Paddock
pro se Plaintiff