UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| SHALYNN F. PADDOCK, M.B. and A.P., | Case No. 1:18-CV-00005-DCN-CWD |
| Plaintiffs, | |
| v. | **REPORT AND RECOMMENDATION RE: Docket Nos. 10, 40, 41** |
| ANDREW BALLOU, BRIANA DIXON,COUNTY OF CANYON, a public entity; IDAHO DEPARTMENT OF HEALTH AND WELFARE CPA, RAYCHELLE MINDEN, in her individual capacity; MIRANDA SQUIBB, in her individual capacity; JASMINE OLMEDO, in her individual capacity; ARACELI LUNA, in her individual capacity; CALDWELL POLICE DEPARTMENT, OFFICER T. EDWARDS, in his individual capacity; OFFICER DEFUR, in his individual capacity; KIDS SERVICES, INC. of Caldwell, Canyon County, Idaho and JOHN AND JANE DOES 1-50, | |
| Defendants. | |

**REPORT AND RECOMMENDATION – 1**

## INTRODUCTION

Pending before the Court are three motions to dismiss filed by Defendants KIDS Services, Inc., Andrew Ballou,[1] and Briana Dixon. (Dkt. 10, 40, 41.) The motions to dismiss are ripe for the Court's consideration. Having reviewed the record herein, the Court finds the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, the motions will be decided on the record without oral argument. Dist. Idaho L. Rule 7.1(d).

The pertinent claims asserted against the moving parties[2] begin with count one, brought under Section 1983, which claims that Plaintiff's Fourteenth Amendment right to familial association was violated by Defendants KIDS Services and Briana Dixon, Defendant Ballou's girlfriend (or spouse). (Dkt. 1, p. 13.) Next, Plaintiff alleges violations of the Sixth Amendment against Ballou in count two, and the Thirteenth Amendment against Defendant KIDS Services and "CPS Workers" in count three. *Id.*

Turning to Plaintiff's state law claims, count five alleges a violation of her state civil rights by all Defendants, but does not state which specific rights were violated. (Dkt. 1, ¶ 74–87.) And second, Plaintiff alleges in count nine that all Defendants committed the

---

[1] Andrew Ballou may spell his name "Ballau," as he did in the signature block for his memorandum filed at Docket No. 40-1.

[2] The Court's report and recommendation, if adopted, will not dispose of all claims asserted against the various Defendants in this case. Further, only Ballou, Dixon, and KIDS Services have appeared.

**REPORT AND RECOMMENDATION – 2**

tort of invasion of privacy. (Dkt. 1, ¶ 88–94.) After careful consideration of the briefing, the standard of review, and relevant authorities, the Court will recommend that all three motions to dismiss be granted.

## BACKGROUND

Plaintiff Shalynn Paddock (Plaintiff), who appears pro se in this matter, brings both constitutional claims under 42 U.S.C. § 1983 (Section 1983) and state law claims. (Dkt. 1, ¶ 1.) Defendants in this case are: Canyon County, Canyon County Sheriff's Department, Caldwell Police Department, Raychelle Minden, Miranda Squibb, Jasmine Olmedo, Araceli Luna, Officer T. Edwards, Officer Defur, Kids In Divorce Support Services, Inc. (KIDS Services),[3] Briana Dixon, and Andrew Ballou. (Dkt. 1, ¶ 4–15.) Defendants Minden, Squibb, Olmedo, and Luna are identified as employees of Child Protective Services (CPS) in Canyon County. (Dkt. 1, ¶ 7–10, 16.) Defendant Officers Edwards and Defur are both employees of the Caldwell Police Department. (Dkt. 1, ¶ 11–12.) KIDS Services is a private company located in Canyon County. (Dkt. 1, ¶13; (Dkt. 13.) It appears Andrew Ballou is the father of one of Plaintiff's children, M.B., and Briana Dixon is either Ballou's girlfriend or spouse. When reading the caption and complaint together, it is unclear if the government employees named as defendants are being sued in their individual capacities, their official capacities, or both, as the information in the caption does not fully align with the allegations in the complaint.

---

[3] Plaintiff does not identify any employees of KIDS Services in her Complaint, other than by including Doe Defendants.

**REPORT AND RECOMMENDATION – 3**

Plaintiff asserts that all named Defendants deprived her of various constitutional and state rights during investigations regarding allegations of child abuse, which later resulted in the removal of her minor children from the home. (Dkt. 1.) Plaintiff states the investigation stemmed from allegations that Plaintiff's son, M.B., was not being fed, had bruises on his body from being hit by Plaintiff, had bedbugs present in his bed, and was often locked in his bedroom for long periods of time. (Dkt. 1, ¶ 20; *see also* Report, Dkt. 1-2 at 4.) Additional allegations in the underlying investigation included that drugs and drug paraphernalia were present in the home, and that Plaintiff was consuming alcohol while breastfeeding. (Dkt. 1, ¶ 20.)

Plaintiff was subjected to numerous welfare checks performed by both CPS employees and law enforcement officials, where the purpose was to ensure that Plaintiff's children were living in a safe environment. (Dkt. 1, ¶ 20, 22.) On November 17, 2017, Plaintiff alleges that Officer Defur was in possession of a protection order that instructed him to remove M.B. from Plaintiff's home, which he did, based on the continuing allegations of child abuse. (Dkt. 1, ¶ 23.) KIDS Services later facilitated supervised visitations between M.B. and Plaintiff. (Dkt. 1, ¶ 23, 26.)

KIDS Services charged Plaintiff a sixty-dollar intake fee, as well as fifty dollars per hour to participate in supervised visits with M.B. (Dkt. 1, ¶ 26.) Plaintiff asserts that KIDS Services told her when and how long her visits with M.B. would be – she was not given a choice in the matter. (Dkt. 1, ¶ 26.) After the first visit with M.B., Plaintiff contacted KIDS Services to find out when her next visitation was scheduled, but Plaintiff did not receive a response from KIDS Services. (Dkt. 1, ¶ 35.) Last, Plaintiff alleges that

**REPORT AND RECOMMENDATION – 4**

KIDS Services scheduled a visitation appointment, failed to inform Plaintiff about the appointment, and then charged Plaintiff forty dollars for missing the appointment. (Dkt. 1, ¶ 35, 37.)

Another incident occurred on December 9, 2017. (Dkt. 1, ¶ 30.) According to Plaintiff's complaint, Defendants Olmedo and Officer Edwards arrived at Plaintiff's home with the intent of performing a welfare check. Specifically, they requested to check on Plaintiff's infant daughter, A.P., as they believed the baby had rashes on her body, and had been given soda by way of bottle-feeding. *Id.* Upon arrival, Defendants allegedly pushed their way into Plaintiff's home. *Id.* Plaintiff asserts she did not provide Defendants with consent to enter the home and told them to leave. *Id.* Defendants Olmedo and Officer Edwards allegedly forced Plaintiff to remove her daughter's clothing so she could be inspected for rashes by these Defendants. *Id.* Plaintiff's home was also searched by these officials, which included a search for bedbugs in the mattresses and a search of Plaintiff's roommate's bedroom. *Id.* It is unclear from Plaintiff's complaint whether Defendants Olmedo and Officer Edwards had obtained judicial authorization prior to entering and searching the home, and examining A.P. *Id.*

On February 6, 2018, KIDS Services filed a motion to dismiss. (Dkt. 10.) Plaintiff was provided an opportunity to respond to the motion, and she received notice regarding how to do so. (Dkt. 11.) Plaintiff filed a document on February 27, 2018, titled "Questions for KIDS Services' Council [sic] Concerning Motion to Dismiss." (Dkt. 26.) KIDS Services responded to Plaintiff's filing by indicating that Plaintiff did not address the legal issues raised by KIDS Services in its motion to dismiss. (Dkt. 32.) KIDS

**REPORT AND RECOMMENDATION – 5**

Services asserts that Plaintiff failed to allege facts to support a cognizable cause of action against it, and requests the Court grant its motion to dismiss. *Id.*

Plaintiff later filed an opposition to KIDS Services' motion to dismiss on April 5, 2018. (Dkt. 44.) Plaintiff opposes the motion on the grounds that a conflict of interest exists, because legal counsel for KIDS Services is also a director of the organization. Plaintiff alleges also that KIDS Services "has a close monetary relationship with the courts thus causing a biased relationship in favor of the wishes of the courts, police, prosecutors, and judges." KIDS Services responded, asserting that the objections Plaintiff raised are insufficient as a matter of law to defeat its motion to dismiss, and Plaintiff failed to identify any substantive issues of law which would affect the motion. (Dkt. 49.)

On April 3, 2018, Defendants Ballou and Dixon separately filed motions to dismiss with accompanying memoranda, which are nearly identical to each other, and substantially similar to KIDS Services memorandum. (Dkt. 40, 41.) Ballou raises three arguments. First, that this is a custody dispute and the complaint raises frivolous allegations against Ballou that should be resolved in state court. (Dkt. 40, 31.)[4] Second, Ballou contends that, to the extent Plaintiff alleges civil rights violations against him, Plaintiff failed to file a complaint with the Idaho Human Rights Commission prior to filing suit. And third, Ballou asserts that Plaintiff's claim for invasion of privacy is not viable. Dixon raises the same arguments in her motion to dismiss. (Dkt. 41-1.)

---

[4] Defendant Ballou's Amended Answer references a criminal matter pending in Canyon County against Plaintiff for misdemeanor injury to a child.

REPORT AND RECOMMENDATION – 6

Additionally, in their answers, both Ballou and Dixon asserted that the complaint failed to state claims against them upon which relief could be granted. (Dkt. 30, 31.)

In response, Plaintiff argues neither Ballou nor Dixon addressed all of the allegations made against them in her Complaint; discovery has not yet been conducted so she cannot support her claims; the custody matter is a separate matter, and has no relationship to the civil rights claims she brings here; and last, that she is not required to file a complaint with any state agency if she believes "there will be no fair resolution at the state level." (Dkt. 51, 52.)[5]

## STANDARDS OF REVIEW

### 1.    Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). While a complaint attacked by a Rule 12(b)(6) motion to dismiss "does not need detailed factual allegations," it must set forth "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555. The principle "that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (citing *Twombly* at 555).

---

[5] Plaintiff filed separate, but identical, responses to Dixon's and Ballou's motions.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id*. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. at 557.

The United States Supreme Court identified two "working principles" that underlie *Twombly* in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). First, the Court need not accept as true legal conclusions that are couched as factual allegations. *Id*. Rule 8 does not "unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79. Second, to survive a motion to dismiss, a complaint must state a plausible claim for relief. *Id.* at 679. "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Additionally, a *pro se* complaint must be construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "A *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted). Because Plaintiff

**REPORT AND RECOMMENDATION – 8**

proceeds *pro se*, the Court must construe her pleadings liberally and afford her the benefit of any doubt. *See Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (en banc).

## 2.     Jurisdiction

Federal courts are courts of limited jurisdiction. They possess only that power authorized by the Constitution and statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court must have subject-matter jurisdiction over claims brought before it. Federal courts have original jurisdiction over cases "arising under the Constitution, laws or treaties of the United States," 28 U.S.C. § 1331, or in which the citizenship of the parties is completely diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). Because subject-matter jurisdiction "involves a court's power to hear a case…, it [cannot] be forfeited or waived." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006) (quoting *United States v. Cotton*, 535 U.S. 625, 630 (2002)).

In certain contexts, federal law provides special rules for federal courts to exercise supplemental jurisdiction over related state law claims. That is, jurisdiction over claims that arise out of the same transaction or occurrence as the claims set forth in the original complaint. 28 U.S.C. § 1367. A federal court may exercise supplemental jurisdiction over such claims when they derive from a common nucleus of operative fact. *See generally United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966). The following three criteria are considered to determine whether facts form a common nucleus of operative fact: (1) when the facts are related in time, space, origin or motivation; (2) when the facts form a convenient trial unit; and (3) when treating the facts as a unit would conform to the

**REPORT AND RECOMMENDATION – 9**

parties' expectations. *Apparel Art Int'l, Inc. v. Amertex Enters. Ltd.*, 48 F.3d 576, 584 (1st Cir. 1995).

Finally, even when proper, the exercise of supplemental jurisdiction is discretionary. 28 U.S.C. § 1367(c). A court may decline to exercise jurisdiction under any one of four scenarios: (1) when exercising jurisdiction would require a ruling on a novel or complex state law claim; (2) when the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) if the district court has dismissed all claims over which it has original jurisdiction; or (4) if there are other compelling reasons for the court to decline to extend supplemental jurisdiction. *Id.*

## DISCUSSION

### 1.    KIDS Services' Motion to Dismiss

Plaintiff alleges the following four claims against KIDS Services: a violation of familial association pursuant to the Fourteenth Amendment; a violation of Plaintiff's right to be free from involuntary servitude pursuant to the Thirteenth Amendment; a violation of state civil rights; and, the tort of invasion of privacy. KIDS Services moves to dismiss the constitutional claims on the grounds that it is not a state actor; Plaintiff has not alleged specific facts constituting unconstitutional conduct; and, even if there is state action, KIDS Services is entitled to absolute quasi-judicial immunity. With regard to the state law claims, KIDS Services argues Plaintiff has not alleged she filed a complaint with the Idaho Commission on Human Rights, or alleged facts to support a state law claim for invasion of privacy.

**REPORT AND RECOMMENDATION – 10**

As explained below, the Court agrees that Plaintiff has failed to plead sufficient facts to state a claim against KIDS Services. Therefore, the Court will recommend KIDS Services' motion to dismiss be granted and all claims against KIDS Services be dismissed, with the opportunity to amend.[6]

### A. Constitutional Claims – Thirteenth Amendment (*Count Three*) and Fourteenth Amendment (*Count One*)

Section 1983 provides a remedy for individuals who have been deprived of one or more of their federal constitutional rights by a person acting under color of state law. 42 U.S.C. § 1983; *see, e.g.*, *Burke v. Cty. of Alameda*, 586 F.3d 725, 731 (9th Cir. 2009). "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (citation omitted). To prevail on her Section 1983 claims, Plaintiff must show that: (1) acts by the Defendants, (2) under color of state law, (3) deprived her of federal rights, privileges or immunities, and (4) caused her damage. *Thornton v. City of St. Helens*, 425 F.3d 1158, 1163–64 (9th Cir. 2005) (quoting *Shoshone–Bannock Tribes v. Idaho Fish & Game Comm'n*, 42 F.3d 1278, 1284 (9th Cir. 1994)).

#### (1) State Action

To state a claim for relief under Section 1983, it must be shown that KIDS Services and its employees were acting under color of state law when they allegedly

---

[6] The Court notes that Plaintiff's complaint is missing pages 21 and 22.

**REPORT AND RECOMMENDATION – 11**

denied Plaintiff of her rights under the Thirteenth and Fourteenth Amendments. However, Plaintiff asserts that KIDS Services is a private corporation that facilitates supervised visitation between children and their parents. Private corporations act under color of state law only when the alleged infringement of federal rights is "fairly attributable to the state." *Flowers v. City of Parma*, No. 1:14-CV-00453-EJL, 2015 WL 4757330, at *6 (D. Idaho Aug. 12, 2015) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

"State action may be found if, though only if, there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself." *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 955 (9th Cir. 2008) (en banc) (citing *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001)). "Action taken by a private individual may be 'under color of state law' where there is 'significant' state involvement in the action." *Howerton v. Gabica*, 708 F.2d 380, 382 (9th Cir.1983). The United States Court of Appeals for the Ninth Circuit has identified four general approaches to determine whether private conduct is attributable to the state: 1) public function, 2) joint action/participation, 3) governmental compulsion or coercion, and 4) governmental nexus. *Henneberry v. City of Newark*, Case No. 13–cv–05238–MEJ, 2014 WL 4978576, at *10 (N.D. Cal. Oct. 6, 2014) (citation omitted); *see also Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003).

"Under the public function test, 'when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the state and subject to its constitutional limitations.'" *Lee v. Katz*,

**REPORT AND RECOMMENDATION – 12**

276 F.3d 550, 554–55 (9th Cir. 2002) (quoting *Evans v. Newton*, 382 U.S. 296, 299 (1966)). Under the joint action or participation test, "a private party acts under color of state law if 'he [or she] is a willful participant in joint action with the State or its agents.'" *Lopez v. Dept. of Health Servs*., 939 F.2d 881, 883 (9th Cir. 1991) (quoting *Dennis v. Sparks*, 449 U.S. 24, 27 (1980)). The coercion test is most often applied in situations involving forced participation in alleged religion-based programs in prison, which is not the case here. *Anderson v. Craven*, No. CV-07-246-BLW, 2009 WL 804691, at *4 (D. Idaho Mar. 26, 2009). And finally, "[u]nder the governmental nexus test, a private party acts under color of state law if 'there is a sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.'" *Lopez*, 939 F.2d at 883 (quoting *Jackson*, 419 U.S. at 351) (Constitutional deprivation caused by private party involves state action if claimed deprivation resulted from exercise of a right or privilege having its source in state authority.)).

KIDS Services contends it is not a state actor, and is merely a corporation formed under the laws of the State of Idaho. KIDS Services does not specifically mention the four general approaches recognized in the Ninth Circuit to determine whether private conduct is attributable to the State. Rather, KIDS Services argues generally that its actions (and those of its employees) are not attributable to the State, because its role in family court proceedings is limited to providing reports to the court regarding supervised visitation.

**REPORT AND RECOMMENDATION – 13**

Other than alleging in her motion that KIDS Services receives money from the State, Plaintiff has not alleged facts raising a plausible inference of state action. Plaintiff alleges KIDS Services is a corporation doing business in Canyon County. The only factual allegations related to KIDS Services include the amount of money Plaintiff was charged for supervised visitation with her son, that she was not given a choice of when and how long the meetings would last, and that KIDS Services failed to properly communicate the time and date of a scheduled visitation. None of these factual allegations plausibly alleges state action under either the public function, joint action, or governmental nexus tests. Further, under the Idaho Rules of Family Law Procedure, Rule 717(D) clarifies that providers of court ordered supervision are not parties to the court proceeding.

Because there are no factual allegations in the Complaint establishing that KIDS Services was a state actor, the Court will recommend that Plaintiff's constitutional claims be dismissed.

### (2) *Thirteenth Amendment*

Even if Plaintiff alleged sufficient facts establishing state action, Plaintiff has stated no plausible claim based upon the Thirteenth Amendment against KIDS Services or its employees. The Thirteenth Amendment is "an absolute declaration that slavery or involuntary servitude shall not exist in any part of the United States." *Civil Rights Cases*, 109 U.S. 3, 20 (1883). The Thirteenth Amendment encompasses the right to be free from involuntary servitude, where "involuntary servitude" is defined as "the condition of one

**REPORT AND RECOMMENDATION – 14**

forced to labor – for pay or not – for another by coercion or imprisonment." *Black's Law Dictionary* 1493 (9th ed. 2009).

Plaintiff alleges that KIDS Services violated her right to be free from involuntary servitude under the Thirteenth Amendment. However, Plaintiff's factual allegations indicate that KIDS Services provided supervised visitation services. No plausible allegations are included to show that the provision of supervised visitation services rises to the level of slavery under the Thirteenth Amendment. There are no allegations of forced labor, coercion, or imprisonment, and the Court can foresee no facts that may constitute the same under the circumstances alleged in Plaintiff's complaint.

The Court will therefore recommend that Plaintiff's Thirteenth Amendment claim asserted against KIDS Services and its employees be dismissed.

### (3) *Fourteenth Amendment*

Similarly, even if Plaintiff had alleged sufficient facts establishing state action by KIDS Services, Plaintiff has not raised a plausible inference that her Fourteenth Amendment rights were violated. Plaintiff alleges that KIDS Services violated her right of familial association – that is, the right for parents and children to live together without interference by the government. *Wallis v. Spencer*, 202 F.3d 1126, 1136 (9th Cir. 2000). This essential liberty interest is protected by the Fourteenth Amendment's "guarantee that parents and children will not be separated by the state without due process of law[,] except in an emergency." *Id.*; *see also Mabe v. San Bernardino County, Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1107 (9th Cir. 2001). When the state has a legitimate interest in interfering with a parent-child relationship, the state may legitimately interfere so long

**REPORT AND RECOMMENDATION – 15**

as it provides "fundamentally fair procedures." *Alberici v. Cty. of Los Angeles*, No. CV 12-10511-JFW VBKX, 2013 WL 5573045, at *15 (C.D. Cal. Oct. 9, 2013) (quoting *Santosky v. Kramer*, 455 U.S. 745, 754, (1982)).

To prevail on Plaintiff's due process claim premised on the unwarranted interference with familial rights, Plaintiff must demonstrate that the government's action at issue was so egregious or ill-conceived that it shocks the conscience. *Alberici v. Cty. of Los Angeles*, No. CV 12-10511-JFW VBKX, 2013 WL 5573045, at *16 (C.D. Cal. Oct. 9, 2013). "[T]he due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998). "[T]he Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process." *Id*. To impose liability for violation of an individual due process right, the official's actions must "shock the conscience." *Id*. at 846; *see also Wilkinson v. Torres*, 610 F.3d 546, 555 (9th Cir. 2010).

Based upon the above standard, Plaintiff has not made sufficient allegations to show the provision of supervised visitation services, which allowed Plaintiff time with her children, constituted a violation of Plaintiff's right to familial association under the Fourteenth Amendment.

The Court will therefore recommend that Plaintiff's Fourteenth Amendment Claim be dismissed as to KIDS Services and its employees, with leave to amend.

**B.** ***State Law Claims Against Kids Services***

Plaintiff alleges two state law claims[7] against KIDS Services. First, she alleges KIDS Services violated her state civil rights. And second, she alleges KIDS Services committed the tort of invasion of privacy.

### (1) *State Civil Rights Claim – Count Five*

Plaintiff alleges that her rights are "protected by appropriate Idaho Civil Codes," which entitle her to compensatory and punitive damages, but fails to identify which state statute or constitutional provision may be applicable. Compl. ¶ 77. (Dkt. 1.) Although Plaintiff does not allege discrimination in her Complaint, KIDS Services argues Plaintiff cannot assert a civil rights complaint under the Idaho Human Rights Act, Idaho Code Section 67-5901, et. seq.

The Idaho Human Rights Act's stated purpose is:

> To secure for all individuals within the state freedom from discrimination because of race, color, religion, sex or national origin or disability in connection with employment, public accommodations, and real property transactions, discrimination because of race, color, religion, sex or national origin in connection with education, discrimination because of age in connection with employment, and thereby to protect their interest in personal dignity, to make available to the state their full productive capacities, to secure the state against domestic strife and unrest, to preserve the public safety, health, and general welfare, and to promote the interests, rights and privileges of individuals within the state.

Idaho Code § 67-5901.

---

[7] Plaintiff asserts a claim for violation of state civil rights against all Defendants. The Court discusses the claim as it relates to Ballou and Dixon later in this report.

**REPORT AND RECOMMENDATION – 17**

The Idaho Human Rights Act prohibits discrimination in employment, public accommodation, real property transactions, and education. Public accommodation is defined as "a business, accommodation, refreshment, entertainment, recreation, or transportation facility of any kind, whether licensed or not, whose goods, services, facilities, privileges, advantages or accommodations are extended, offered, sold, or otherwise made available to the public." Idaho Code § 67-5902(9). Idaho Code § 67-5909(5) and (6) set forth what constitutes a violation in a place of public accommodation on account of or on a basis of, race, color, religion, sex, national origin, or disability.[8]

Plaintiff alleges she had her first visitation with her son, M.B., at KIDS Services business location in Caldwell. Although KIDS Services appears to be a private entity and

---

[8] Under Section 5909,

> It shall be a prohibited act to discriminate against a person because of, or on a basis of, race, color, religion, sex or national origin, in any of the following subsections….
> ***
> (5)  For a person:
> (a)  To deny an individual the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations of a place of public accommodation, or
> (b)  To print, circulate, post, or mail or otherwise cause to be published a statement, advertisement or sign which indicates that the full and equal enjoyment of the goods, services, facilities, privileges, advantages of a place of public accommodation will be refused, withheld from, or denied an individual or that an individual's patronage of or presence at a place of public accommodation is objectionable, unwelcome, unacceptable, or undesirable.
> (6)  For a person who owns, leases or operates a place of public accommodation:
> (a)  To deny an individual on the basis of disability the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of a place of public accommodation; …

**REPORT AND RECOMMENDATION – 18**

not a place of public accommodation under the Idaho Human Rights Act,[9] the Court

considers the provisions of the Act prohibiting discrimination in a place of public

accommodation as the only potentially viable application of the Act under the facts

alleged. But, even assuming KIDS Services might qualify as a place of public

accommodation, Plaintiff has not alleged facts raising a plausible inference of

discrimination by KIDS Services because of race, color, religion, sex, national origin, or

disability. Therefore, Plaintiff has not stated a violation of her state civil rights under the

Idaho Human Rights Act.[10]

### (2)  *Invasion of Privacy – Count Nine*

Plaintiff alleges that she and her son have a protected liberty interest in the privacy

and integrity of their family unit, free of unwarranted governmental intrusion. She alleges

that, by removing M.B. from her care and custody, "all defendants" violated her privacy

interests.

In Idaho, the four recognized categories of invasion of privacy are: (1) intrusion

upon the plaintiff's seclusion or solitude, or into her private affairs; (2) public disclosure

of embarrassing private facts about the plaintiff; (3) publicity which places the plaintiff in

---

[9] Public accommodation laws were originally enacted to prevent discrimination in traditional places of public accommodation, like inns and trains. *Boy Scouts of Am. v. Dale*, 530 U.S. 650, 657 (2000). Over the years, the concept has expanded to include more places, such as taverns, restaurants, retail shops, and public libraries. *Id.*

[10] Even if Plaintiff had alleged facts supporting a claim for discrimination under the Idaho Human Rights Act, she has not alleged facts establishing that she filed an administrative complaint with the Commission on Human Rights. The filing of a complaint with the Commission is "a condition precedent to litigation." Idaho Code § 67-5908(2).

**REPORT AND RECOMMENDATION – 19**

a false light in the public eye; and (4) appropriation, for the defendant's advantage, of the plaintiff's name and likeness. *See Peterson v. Idaho First Nat. Bank*, 367 P.2d 284 (Idaho 1961); *see also Baker v. Burlington N., Inc.*, 587 P.2d 829 (Idaho 1978); *see also Hoskins v. Howard*, 971 P.2d 1135, 1140 (Idaho 1998).

The first two types of invasion of privacy claims require "the invasion of something secret, secluded or private pertaining to the plaintiff." *Peterson v. Idaho First Nat'l Bank*, 367 P.2d 284, 286 (Idaho 1961) (quoting PRIVACY, William L. Prosser, 48 Cal. Law Review 383, at 407 (1960)); *see also Steele v. Spokesman-Review*, 138 Idaho 249, 253, 61 P.3d 606, 610 (2002) ("To establish a claim for public disclosure of private facts or intrusion into solitude or seclusion, the areas intruded upon must be, and are entitled to be, private."). As for the third type, one of the elements of proving invasion of privacy by false light requires some "public disclosure of falsity or fiction concerning the plaintiff." *Steele v. Spokesman-Review*, 253, 61 P.3d 606, 610 (Idaho 2002). It does not appear here that the fourth type of claim – appropriation of Plaintiff's name or likeness for economic gain– is or could be implicated against KIDS Services based upon the circumstances described in the Complaint.

First, there are no facts alleged indicating KIDS Services participated in the conduct Plaintiff identifies as supporting her claim for invasion of privacy. Plaintiff alleges the tort was committed by removal of M.B. from her home. But the specific allegations involving KIDS Services are only that the amount of money KIDS Services charged Plaintiff for supervised visits with her son was excessive, that she was not given a choice of when and how long the meetings would last, and that KIDS Services failed to

**REPORT AND RECOMMENDATION – 20**

properly communicate the details of a scheduled visitation. In other words, KIDS Services and its employees did not participate in the conduct Plaintiff alleges constitutes invasion of her privacy.

Second, even construing the facts liberally does not allow the Court to draw a plausible inference that KIDS Services could be liable for invasion of privacy. Plaintiff's allegations appear to resemble a claim for invasion of privacy by intrusion based upon her assertion that the supervised visits with her son, M.B., interfered with the parent-child relationship. Invasion of privacy by intrusion requires "(1) an intentional intrusion by the defendant; (2) into a matter, which the plaintiff has a right to keep private; (3) by the use of a method, which is objectionable to the reasonable person." *Hancock v. Idaho Falls Sch. Dist. No. 91*, No. CV-04-537-E-BLW, 2006 WL 1207629 at *5 (D. Idaho May 2, 2006) (quoting *Jensen v. State of Idaho*, 72 P.3d 897, 902 (Idaho 2003)). However, other than some perceived miscommunication, the complaint is devoid of facts to support the cause of action. By definition, supervised visitation is not an intrusion into a matter which Plaintiff had a right to keep private. And further, Plaintiff does not allege that KIDS Services engaged in an outrageous manner of supervision.

Plaintiff's complaint, construed liberally, fails to plead sufficient facts to state a claim for invasion of privacy against KIDS Services and its employees. Therefore, the Court will recommend KIDS Services' motion to dismiss be granted as to Count Nine.

**REPORT AND RECOMMENDATION – 21**

**2.      Defendant Andrew Ballou's Motion to Dismiss**

Plaintiff's complaint asserts three claims against Defendant Andrew Ballou: a violation of the Sixth Amendment to the United States Constitution; a violation of state civil rights; and the tort of invasion of privacy.

The facts alleged in the complaint pertaining to Ballou are scarce. Plaintiff asserts Ballou is an individual residing in Canyon County; Ballou is the "other parent" of M.B.; Ballou did not pay enough attention to M.B.; Ballou arranged to visit M.B. at Plaintiff's home but did not show up for the visits; Ballou was not present during the first few years of M.B.'s life; and Ballou allegedly provided false information to support the filing of a protection order against Plaintiff.

Ballou moves to dismiss all claims asserted against him, and he submitted a memorandum largely based upon KIDS Services' memorandum filed in support of its motion to dismiss. He contends that Plaintiff's claims are based upon a custody dispute, and are frivolous.

As explained below, Plaintiff has failed to plead sufficient facts to state a claim against Ballou. Therefore, the Court will recommend that Ballou's motion to dismiss be granted and the claims against him dismissed.

### A.      *Violation of Sixth Amendment – Count Two*

Under Section 1983, Plaintiff alleges that Ballou violated her Sixth Amendment right "to not be subjected to hearsay evidence regarding the filing of false [sic] protection order and false allegations of child abuse." As set forth above, Section 1983 provides a remedy only for individuals who have been deprived of one or more of their federal

constitutional rights by a person acting under color of state law. 42 U.S.C. § 1983; *see, e.g.*, *Burke v. Cty. of Alameda*, 586 F.3d 725, 731 (9th Cir. 2009). It is alleged that Ballou is a private individual, not a state actor. Absent state action, Plaintiff may not maintain a constitutional claim under Section 1983 against Ballou.

Moreover, the Sixth Amendment guarantees certain rights to defendants in criminal prosecutions, which rights include the right to a speedy and public trial by an impartial jury; to be informed of the nature of the charges; to be confronted with the witnesses against her; to have compulsory process for obtaining witnesses to testify in her favor; and to have the assistance of counsel for her defense. U.S. Const. amend. VI. Plaintiff's claim that Ballou "subjected her to hearsay evidence" does not come within the purview of the Sixth Amendment.

Consequently, Plaintiff cannot state a claim under the Sixth Amendment under any set of facts against Ballou.

### B.    *Violation of State Civil Rights – Count Five*

Next, Plaintiff alleges that Ballou violated her state civil rights. However, despite asserting that "all Defendants" violated her state civil rights, the factual allegations supporting the claim in paragraphs 74 – 78 do not mention Ballou.

Ballou advances the same argument as KIDS Services did in its motion to dismiss regarding the inapplicability of the Idaho Human Rights Act, on the grounds that a complaint was not filed with the Commission, which is a condition precedent to litigation. But even more fundamentally, under a liberal construction of the facts, the Complaint contains no factual support to maintain a claim against Ballou under the Idaho

Human Rights Act. The facts asserted in the complaint pertain to Ballou's involvement with the custody dispute concerning M.B. Even assuming the facts are true, the factual allegations against Ballou do not rise to the level of discrimination within the purview of Idaho Code § 67-5901: there are no allegations of discrimination on account of race, color, religion, sex, national origin, or disability, and Ballou did not provide employment, public accommodation, real property, or educational services to Plaintiff.

Plaintiff cannot state a claim for violation of her state civil rights against Ballou.

### C.    *Invasion of Privacy – Count Nine*

Last, Plaintiff claims that Ballou committed the tort of invasion of privacy. Although count nine includes "all Defendants," paragraphs 88 – 94 do not mention Ballou, or set forth the specific conduct comprising the elements of a claim for invasion of privacy. Ballou argues Plaintiff has not pointed to any conduct constituting an invasion of Plaintiff's privacy.

Even if Plaintiff had specified the nature of the alleged invasion, the facts asserted by Plaintiff do not allow the Court to draw a reasonable inference that Ballou is liable for this tort. Plaintiff alleges Ballou failed to pay attention to M.B., or be present in the child's life. However, such allegations do not plausibly allege invasion of Plaintiff's privacy.

Turning next to Plaintiff's claim that Ballou provided false information to the court in support of a protection order, such facts could conceivably constitute invasion of privacy based upon public disclosure of a falsity or fiction concerning Plaintiff. *See Hancock v. Idaho Falls Sch. Dist. No. 91*, No. CV-04-537-E-BLW, 2006 WL 1207629 *5

**REPORT AND RECOMMENDATION – 24**

(D. Idaho May 2, 2006) (discussing claim for public disclosure of private facts based upon testimony given at a hearing). However, "publicity" requires communication to the public at large. *Id.* There are no allegations that private information was published in a newspaper, or addressed to a large audience. Consequently, there are no facts alleged to support the public disclosure required to establish the elements of invasion of privacy.

Plaintiff's complaint, construed liberally, fails to plead sufficient facts to state a claim for each of the claims Plaintiff attempts to assert against Ballou. Therefore, the Court will recommend Ballou's motion to dismiss be granted.

**3.      Defendant Briana Dixon's Motion to Dismiss**

Plaintiff's complaint asserts three claims against Defendant Briana Dixon: a violation of familial association pursuant to the Fourteenth Amendment; a violation of state civil rights; and the tort of invasion of privacy.

Plaintiff asserts Briana Dixon is an individual who resides in Canyon County. The only facts in the complaint that discuss Dixon include her alleged traffic violations; the fact she dated Andrew Ballou's uncle and, later, Andrew Ballou; and that she "lied to M.B. in an attempt to keep the child away from his mother emotionally."

Dixon's motion and memorandum appear identical to that of Ballou's and, in turn, KIDS Services' memorandum. She contends her motion should be granted and all claims dismissed against her, as Plaintiff's claims are based upon a custody dispute and are frivolous.

As explained below, Plaintiff has failed to plead sufficient facts to state a claim against Dixon. Therefore, the Court will recommend that Dixon's motion to dismiss be granted and the claims against her dismissed.

### A.    *Violation of Familial Association – Count One*

Under Section 1983, Plaintiff alleges that Dixon violated her right of familial association. As previously explained, Section 1983 provides a remedy only for individuals who have been deprived of one or more of their federal constitutional rights by a person acting under color of state law. 42 U.S.C. § 1983; *see, e.g.*, *Burke v. Cty. of Alameda*, 586 F.3d 725, 731 (9th Cir. 2009). There are no allegations that Dixon is anything other than a private citizen who is (or was) dating (or married to) Defendant Ballou.

### B.    *Violation of State Civil Rights – Count Five*

Next, under state law, Plaintiff alleges broadly that Dixon violated her state civil rights. Despite asserting that "all Defendants" violated her state civil rights, the factual allegations supporting the claim in paragraphs 74 – 78 do not mention Dixon.

Like Ballou, Dixon advances the same argument as KIDS Services did in its motion to dismiss regarding the inapplicability of the Idaho Human Rights Act. Even under a liberal construction of the facts, which pertain to Dixon's romantic involvement with Ballou, and hence her interaction with M.B., the complaint contains no factual support to maintain a claim against Dixon under the Idaho Human Rights Act. In other words, the factual allegations against Dixon do not rise to the level of discrimination within the purview of Idaho Code § 67-5901: there are no allegations of discrimination

**REPORT AND RECOMMENDATION – 26**

on account of race, color, religion, sex, national origin, or disability, and Dixon did not provide employment, public accommodation, real property, or educational services to Plaintiff.

### C.   *Invasion of Privacy – Count Nine*

Last, Plaintiff alleges that Dixon committed the tort of invasion of privacy. Like Ballou, Dixon contends Plaintiff has not identified any conduct that satisfies the elements of a claim for invasion of privacy. It is unclear what facts Plaintiff asserts to fulfill the requirements of a claim for invasion of privacy under any one of the four recognized categories.

Nonetheless, liberally construing the facts, it appears Plaintiff's claim is based upon Dixon's intrusion into Plaintiff's private affairs concerning her son by virtue of Dixon's relationship with Ballou, M.B.'s father. These facts most closely resemble a claim for invasion of privacy by intrusion which, as set forth above, requires an intentional intrusion into a private matter by use of an objectionable method. *Hancock*, 2006 WL 1207629 at *5 (quoting *Jensen v. State of Idaho*, 72 P.3d 897, 902 (Idaho 2003)). However, Dixon's actions in dating M.B.'s father or allegedly lying to M.B. about Plaintiff do not constitute an intentional interference with Plaintiff's interest in solitude or seclusion. Plaintiff has not set forth sufficient facts to state a claim for invasion of privacy against Dixon.

Plaintiff's complaint, construed liberally, fails to plead sufficient facts to state a plausible claim for each of the allegations against Dixon. Therefore, the Court will

**REPORT AND RECOMMENDATION – 27**

recommend Dixon's motion to dismiss be granted and all claims asserted against her be dismissed in this action.

### 4.    Leave to Amend Complaint

Although the Court will recommend that the three pending motions to dismiss be granted, the Court must also address whether Plaintiff should be provided the opportunity to amend her complaint against KIDS Services and its employees, and against Ballou and Dixon. Fed. R. Civ. P. 15(a) states that leave to amend a pleading should be freely given "when justice so requires." Typically, leave to amend is liberally granted, but leave is properly denied when amendment would be futile. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 186 (9th Cir. 1987). "[F]utility includes the inevitability of a claim's defeat on summary judgment." *Johnson v. Am. Airlines, Inc.*, 834 F.2d 721, 724 (9th Cir. 1987). A dismissal without leave to amend is improper unless it is beyond doubt that the complaint "could not be saved by any amendment." *Harris v. Amgen, Inc.*, 573 F.3d 728, 737 (9th Cir. 2009).

Plaintiff must satisfy also the pleading standards of Fed. R. Civ. P. 8, and set forth: (1) factual allegations showing that a constitutional or other federal right has been violated; (2) the names of the persons who caused or personally participated in causing the alleged deprivation of her constitutional rights; (3) the dates on which the conduct of each defendant allegedly took place; and (4) the specific conduct or action Plaintiff alleges is unconstitutional. *See Ellis v. Cassidy*, 625 F.2d 227 (9th Cir. 1980); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). Vague and conclusory allegations of official participation in civil rights violations

**REPORT AND RECOMMENDATION – 28**

are not sufficient. *See Ivey v. Board of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). The same pleading standards apply to the state law claims asserted against Defendants.

With regard to the constitutional claims asserted against KIDS Services and its employees under Section 1983, any amendment to the Thirteenth Amendment claim would be futile because, even assuming state action, the conduct alleged does not, as a matter of law, rise to the level of conduct prohibited by the Thirteenth Amendment. As for Plaintiff's Fourteenth Amendment Claim, while it seems doubtful Plaintiff could set forth plausible facts establishing KIDS Services is a state actor, and similarly implausible that the provision of supervised visitation services constitutes a violation of Plaintiff's right to familial association, she may certainly attempt to set forth facts in accordance with the legal principles outlined above.

As for the state law claims asserted against KIDS Services for violation of the Idaho Human Rights Act and for invasion of privacy, amendment would be futile as well. The facts alleged do not constitute a violation of the Idaho Human Rights Act, nor does KIDS Services' conduct in providing supervised visitation appear to plausibly satisfy the elements of a cause of action for invasion of privacy.

Granting leave to amend the claims against Ballou and Dixon similarly would be futile. Plaintiff cannot maintain constitutional claims against Ballou and Dixon, who are both private individuals. Further, based upon the facts set forth in the complaint, the Court cannot discern additional facts which might support a claim against either Ballou or Dixon under the Idaho Human Rights Act, and privacy is not recognized as a state

**REPORT AND RECOMMENDATION – 29**

civil right. Although there could conceivably be a basis for a tort claim of invasion of privacy against either Dixon or Ballou, under the facts alleged, the claims fail as a matter of law.

## CONCLUSION

The Court will recommend the three pending motions to dismiss be granted, and that all claims against KIDS Services, Andrew Ballou, and Briana Dixon be dismissed as a matter of law. The Court will recommend also that Plaintiff be given leave to amend her complaint as outlined above.

## RECOMMENDATION

**NOW THEREFORE IT IS HEREBY RECOMMENDED:**

1)      Defendant KIDS Services, Inc.'s Motion to Dismiss (Dkt. 10) be

**GRANTED**;

2)      Defendant Andrew Ballou's Motion to Dismiss (Dkt. 40) be **GRANTED**;

3)      Defendant Briana Dixon's Motion to Dismiss (Dkt. 41) be **GRANTED**;

and

4)      Plaintiff be given 30 days to file an Amended Complaint. The Court may

review the same to ensure compliance with Fed. R. Civ. P. 8 and this

Court's recommendations above.

Written objections to this Report and Recommendation must be filed within

fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or

as a result of failing to do so, that party may waive the right to raise factual and/or legal

objections to the United States Court of Appeals for the Ninth Circuit.

DATED: June 19, 2018

Honorable Candy W. Dale
United States Magistrate Judge

**REPORT AND RECOMMENDATION – 31**